IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BENJAMIN D. FERGUSON,
      Petitioner,

vs.                                Case No.:  5:11cv398/RS/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Petitioner's amended habeas petition and supporting memorandum, filed under 28 U.S.C. § 2254 (docs. 5, 6).  Respondent filed an answer and relevant portions of the state court record (doc. 10).  Petitioner filed a reply (doc. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and that the petition is without merit and should be denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner is an inmate of the Florida Department of Corrections ("DOC") currently incarcerated at Apalachee Correctional Institution ("Apalachee C.I.").  He challenges a prison disciplinary report (hereinafter "DR") he received at Apalachee C.I. on April 23, 2009, Log # 102-090945, which resulted in a penalty of thirty (30) days on the disciplinary squad, thirty (30) days of

probation, and deprivation of certain canteen privileges for thirty (30) days (Ex. A at 35).[1]  Petitioner

challenged the DR by exhausting his administrative appeals (*id.* at 34–44).  He then filed a petition

for writ of mandamus in the Circuit Court in and for Leon County, Florida, but the state court denied

the petition (Exs. B, D).  Petitioner sought certiorari review by the Florida First District Court of

Appeal ("First DCA"), Case No. 1D11-443 (Ex. G).  The First DCA denied the petition for review

on the merits on June 28, 2011, and denied Petitioner's motion for rehearing on August 12, 2011 (Exs.

J. L).  Ferguson v. Buss, 66 So. 3d 942 (Fla. 1st DCA 2011) (Table).

II.     STANDARD OF REVIEW

        Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a

writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon

a showing that his custody is in violation of the Constitution or laws of the United States.  As the

instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas

review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 ("AEDPA").  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant

part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State court
>> proceeding.

28 U.S.C.A. § 2254 (2002).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 10).  The court cites to the page numbers as enumerated in the court's electronic docketing system.

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87

(Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.  A petitioner is not

entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

<u>Ground One</u>:  "The state circuit court's order denying mandamus relief was contrary to and an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court in *Sandin*, *Supt. Mass. Corr. Inst.*, *Wolff*, and their progeny and was an unreasonable determination of the facts presented in the state circuit court proceedings."

<u>Ground Two</u>:  "The state appellate court's per curiam denial on the merits of Petitioner's amended petition for writ of certiorari was contrary to and an unreasonable application of clearly established U.S. Supreme Court law and was an unreasonable determination of the facts presented in the state court proceeding."

Petitioner contends the state circuit court unreasonably determined the disciplinary proceeding did not invoke any federal due process protections, based upon the fact that he not lose gain time as a result of the disciplinary decision (doc. 5 at 7–14; doc. 6 at 2–10).  He contends he lost twenty (20) days of gain time for the month the disciplinary report was written and an additional twenty (20) days the following month (*id.*).  He additionally contends the disciplinary decision adversely affected his liberty interest in a "good adjustment transfer" to an institution closer to his home and family, pursuant to Florida Statutes § 944.611(1) (*id.*).  He also states the disciplinary decision adversely affected his opportunity for early release, because a discipline-free record is a factor considered in making such determinations (*id.*).  Petitioner contends the DOC violated his due process rights because there was insufficient evidence to support the disciplinary decision, and DOC officials denied him the opportunity to present evidence, specifically, a videotape (*id.*; *see also* Ex. A at 32).  Petitioner contends the First DCA's per curiam denial of his certiorari petition was based upon an unreasonable determination of the facts and contrary to federal and state law (doc. 5 at 15–20; doc. 6 at 11–18).

Respondent contends Petitioner is not entitled to federal habeas relief, because he did not suffer a forfeiture of gain time, and he had no liberty interest in the opportunity to earn gain time, a "good adjustment transfer," or the possibility of early release or clemency (*id.* at 9–13). Therefore, he was not constitutionally entitled to due process protections during the disciplinary proceeding (*id.*).

       1.     Clearly Established Federal Law

Where a prison disciplinary hearing may result in the loss of good time credits, the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), held that the inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.*, 418 U.S. at 564–66. In a subsequent case, the Supreme Court addressed the quantum of evidence necessary to support the factfinder's decision. In Superintendent, Mass. Correctional Inst. v. Hill, 474 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454 (citation omitted). The court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." United States ex rel. Najtauer v. Commissioner of Immigration, 273 U.S. [103], 106, 47 S. Ct. [302], 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.*, 472 U.S. at 455 (citations omitted).

In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach. *See* Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). This is so because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*, 515 U.S. at 485–86. The Court also considered the petitioner's argument that the disciplinary decision affected the duration

of his sentence because a record of prison misconduct could affect his eligibility for parole.  *Id.* at 487.  The Court observed that nothing in state law required the parole board to grant parole in the absence of prison misconduct, and the decision to grant parole "rest[ed] on a myriad of considerations."  *Id.*  The Court concluded that "[t]he chance that a finding of misconduct will alter the balance [in consideration of parole] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  *Id.*

### 2.       Federal Review of State Court Decision

Petitioner raised his due process claims in his mandamus petition filed in the state circuit court (Ex. B).  The state court adjudicated the claim as follows, in relevant part:

> . . . the court notes that the record indicates that no gain time was revoked in this case.  In order to receive relief, a petitioner must show a liberty interest giving rise to a protection of the due process clause.  Sandin v. Conner, 515 U.S. 472, 478, 115 S. Ct. 2293, 2297, [132 L. Ed. 2d 418] (1985); Plymel [v. Moore], 770 So. 2d 242 [(Fla. 1st DCA 2000)].  In Sandin, the Supreme Court reviewed a case in which an inmate went before a disciplinary committee, was prohibited from calling witnesses, was found guilty, and sentenced only to disciplinary segregation.  The Court held that neither the Hawaii prison regulation nor the due process clause afforded the petitioner a protected liberty interest that would entitle him to the safeguards set out in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2663 [41 L. Ed. 2d 935] (1974).  In Plymel, the First District Court of Appeal stated that the "revocation of gain time credits" gives rise to a liberty interest that would entitle an inmate to the due process protections articulated in Wolff and reaffirmed in Sandin.  Therefore, since no gain time was revoked, Petitioner is not entitled to the due process protections articulated in Wolff.  See, Hartley v. McNeil, 2008 U.S. Dist LEXIS 35349, *5 (N.D. Fla. April 2, 2008) ("In cases where a disciplinary decision does not result in the loss of gain time . . . days, due process protections do not attach.").

(Ex. D).

Petitioner sought review of the decision in the First DCA (Ex. G).  The First DCA denied the petition for review on the merits without explanation (Ex. J).  Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, under the "contrary to" prong of § 2254(d)(1), the state court need not cite federal law "so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's precedents.  *See* Early, 537 U.S. at 8.  Additionally, Petitioner is not entitled to relief under

the "unreasonable application" prong unless he demonstrates the decision is objectively unreasonable. *See* Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245,  1256 (11th Cir. 2002).

Initially, Petitioner challenges the state circuit court's factual finding that he did not suffer a loss of gain time from the disciplinary decision.   However, the disciplinary decision itself demonstrates that it resulted only in Petitioner's placement on the "discipline squad" for thirty (30) days, probation for thirty (30) days, and thirty (30) days of "cashless canteen" status (Ex. A at 35). Petitioner failed to produce clear and convincing evidence to rebut the court's finding that he did not lose gain time.   Therefore, the court's finding is presumed correct.   In light of the fact that the disciplinary decision did not result in the forfeiture of earned gain time, Petitioner was not entitled to the due process protections of Wolff and Hill, pursuant to Sandin.  *See e.g.,* Hartley v. McNeil, No. 5:07cv101/RS/EMT, 2008 WL 1844416, at *3  (N.D. Fla. Apr. 23, 2008) (denying habeas petition challenging disciplinary conviction which resulted in 30 days of disciplinary confinement; placement in disciplinary confinement for 30 days was not sufficient to invoke constitutional protection under Sandin) (unpublished); Adamson v. McNeil, No. 3:08cv231/RV/EMT, 2008 WL 5231869, at *2 (N.D. Fla. Dec. 12, 2008) (same) (unpublished).

Additionally, Petitioner's contention that the resulting loss of eligibility to earn basic gain time, pursuant to Florida statutes and DOC administrative rules, was a sufficient liberty interest to invoke the protections of the Due Process Clause, is without merit.   "[S]tate statutes may create liberty interests that are entitled to procedural protections of the Due Process clause [of the Fourteenth Amendment]."  Vitek v. Jones, 445 U.S. 480, 488, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980).   A petitioner states a cognizable claim that he has been denied due process of law if he shows "a legitimate claim of entitlement . . . through statutory language creating a protectable expectation." Slocum v. Ga. State Bd. of Pardons & Paroles, 678 F.2d 940, 941 (11th Cir. 1982).

Florida law in effect at the time of Petitioner's offense conduct provided the following, with respect to basic gain-time:

> (1)  The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.

(2)(a)  The department shall establish <u>for each prisoner sentenced to a term of years</u> a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire.  In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
. . . .
(3)(a)  The department shall also establish <u>for each prisoner sentenced to a term of years</u> a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section.  The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
. . . .
(4)(a)  As a means of encouraging satisfactory behavior, the department shall grant basic gain-time at the rate of 10 days <u>for each month of each sentence</u> imposed on a prisoner, . . .

Fla. Stat. § 944.27 (emphasis added).  Inmates sentenced to life imprisonment, like Petitioner, are not eligible to earn basic gain time.  *See*  Fla. Stat. §§ 944.275(2)(a), 944.275(4)(a); F.A.C. 33-603.402 (no inmate shall be eligible to receive or accumulate basic gain time if serving a life sentence); <u>Tal-Mason v. State</u>, 700 So. 2d 453, 455 (Fla. 4th DCA 1997 ("[U]nder a life sentence, [a prisoner] cannot earn gain time, no matter how exemplary his conduct may be while incarcerated."); <u>Jackson v. Fla. Dep't of Corr.</u>, 790 So. 2d 398, 400 (Fla. 2001) (noting that an inmate who is serving a life sentence is ineligible to earn gain time); <u>Clines v. State</u>, 912 So. 2d 550, 559 n.5 (Fla. 2005); *see also, e.g.*, <u>Ferguson v. Buss</u>, No. 4:10cv232/MMP/WCS, 2011 WL 3625703, at *1–2 (N.D. Fla. June 17, 2011) ("since Petitioner is serving a life sentence, he has no liberty interest protected by procedural due process in gaintime."), *Report and Recommendation Adopted by* 2011 WL 3611407 (N.D. Fla. Aug. 17, 2011); <u>Osterback v. Crosby</u>, No. 4:01cv76/WS/WCS, 2004 WL 964139, at *3 (N.D. Fla. Mar. 25, 2004) (the loss of gain time or the placement in administrative confinement is insufficient to sustain a procedural due process claim when a prisoner is serving a life sentence) (unpublished).  Because Petitioner cannot earn basic gain time, he had no due process liberty interest in earning it.

To the extent Petitioner contends he had a liberty interest in the opportunity to earn incentive gain time, his claim is without merit.  Florida law in effect at the time of Petitioner's disciplinary conviction provided the following, with respect to incentive gain time:

(4)(b)  For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph.  The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.

1.  For sentences imposed for offenses committed prior to January 1, 1994, up to 20 days of incentive gain-time may be granted.  If granted, such gain-time shall be credited and applied monthly.

Fla. Stat. § 944.275 (2009).  Florida law additionally provided, "The department may declare that a prisoner who commits a violation of any . . . rule or regulation of the department or institution on or after January 1, 1996, and who is found guilty pursuant to s. 944.28(2), shall not be eligible to earn incentive gain-time for up to 6 months following the month in which the violation occurred.  The department shall adopt rules to administer the provisions of this section." Fla. Stat. § 944.281 (2009).

The Florida Administrative Code contains procedures concerning awards of incentive gain-time.  Subsection (3) of Section 33-601.101 sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components."  Many factors are considered, including hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance.  *Id.*

Subsections (5) and (6) provide:

(5)  Disqualifications.  The following conditions will disqualify an inmate for an award of incentive gain time for the period stated.

(6)  Inmates in disciplinary confinement status are not eligible for a work/program rating even if assigned to work or programs while in disciplinary confinement. . . .

(a) Disciplinary or court action.  An inmate is not eligible to receive incentive gain time for the month in which there is an infraction of the rules of the Department or the laws of the State for which he is found guilty . . . Any inmate who is found guilty of a disciplinary report on or after April 21, 1996 and who is serving a sentence imposed for an offense committed on or after October 1, 1995 shall be eligible to earn incentive gain time as follows: . . .

1.  For disciplinary reports in which the final approved action is not confinement or loss of gain time or where the final recommended action is probation, pursuant to paragraph 33-601.308(3)(b), F.A.C., the inmate shall be eligible to earn incentive gain time the month following the month in which the disciplinary infraction occurred. . .
.

F.A.C. 33-601.101 (effective September 17, 1998 to July 15, 2009).

Nothing in Florida law required the prison officials to grant Petitioner incentive gain-time, even in the absence of the April 23, 2009 disciplinary decision. *See* Fla. Stat. §§ 944.275, 944.28(2); F.A.C. 33-601.101. Indeed, whether he would have actually been awarded incentive gain-time in any given month depended upon a number of factors tied to his future behavior, and the amount of the gain time awarded, if any, was entirely within the discretion of the Department of Corrections officials who were making these evaluations. *See* Fla. Stat. § 944.275; F.A.C. 33-601.101; *see also* Francis v. Fox, 838 F.2d 1147, 1149 (11th Cir. 1988) ("when the statute is framed in discretionary terms there is not a liberty interest created."). Thus, Petitioner cannot show he had a legitimate expectation of incentive gain-time. *See* Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (no due process liberty interest arose from the possibility that a prisoner may receive a discretionary grant of incentive good time); Sultenfuss v. Snow, 35 F.3d 1494, 1499–1500 (11th Cir. 1994) (en banc ) (parole context). Accordingly, the loss of the eligibility to earn incentive gain-time provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause. *See, e.g.*, Hartley v. Warden of Fla. State Prison, 352 F. App'x 368, 369–71 (11th Cir. 2009) (concluding that petitioner had no liberty interest in eligibility to earn incentive gain time) (unpublished); Hartley v. Ellis, No. 3:09cv42/MCR/MD, 2009 WL 2729938, at *3–8 (N.D. Fla. Aug. 24, 2009), *Report and Recommendation Adopted by* 2009 WL 3571293 (N.D. Fla. Oct. 26, 2009) (same) (unpublished); Hartley v. McNeil, No. 5:07cv101/RS/EMT, 2008 WL 1844416, at *3–4 (N.D. Fla. Apr. 23, 2008) (same) (unpublished).[3]

---

[3] A number of Circuit Courts evaluating similar statutory schemes have held that there is no liberty interest and, therefore, no due process protection in the mere opportunity to earn gain time. *See* Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000) (although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time

Petitioner's argument that the adverse effect of the disciplinary decision on his alleged right to a "good adjustment transfer" closer to his home, pursuant to Florida statutes and DOC administrative rules, was a sufficient liberty interest to invoke the protections of the Due Process Clause, is equally unavailing.  Petitioner's contends the DOC's rule 33-601.201(1)(a) creates a constitutionally protected liberty interest in his placement in a facility near his family.  That rule provides, in relevant part:

> (1) Facility Assignments.
>
> (a) A mission description shall be prepared for each facility of the Department of Corrections to which an inmate can be assigned.  The mission description shall be based upon such factors as staffing patterns, perimeter security, construction features, electronic monitoring capability, type of health services provided, available programs, and any other factors that may affect the security and safety of the staff, inmates, or the general public.  The mission descriptions shall be used to aid in the assignment of inmates to facilities in a manner which will best enable the department to maintain security and order.  Inmate evaluation and facility assignment shall be based upon such factors as nature and severity of offense, characteristics of sentence, criminal history, age, health status, and any other factor relating to the security and order of the institution or the security and safety of the general public.  An inmate shall be assigned to a facility that can provide appropriate security and supervision, that can meet the health needs of the inmate as identified by the department's health services staff, and, to the extent possible, can meet the inmate's need for programs and is near the location of the inmate's family.  The Secretary may modify the mission of any facility to meet changing needs in response to changes in population characteristics, or in the event of riot, emergency conditions or other circumstances affecting security and safety of the general public, staff, and inmates.

F.A.C. r. 33-601.210(1)(a).  Petitioner contends the use of the word "shall" in the sentence, "An inmate shall be assigned to a facility that . . . is near the location of the inmate's family" creates a liberty interest in his placement in a facility nearest his family.

The DOC has the discretion to transfer inmates from one institution to another "as circumstances may require." Fla. Stat. § 944.17(1), (2), (7).  Additionally, the DOC regulation cited by Petitioner includes qualifying language that subjugates the inmate's interest in placement near

---

credit); <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (applying <u>Sandin</u> and holding that the loss of the opportunity to earn gain time is not a constitutionally protected liberty interest).

family and his need for prison programs to the interests of security and supervision, and the inmate's health needs.  F.A.C. r. 33-601.210(1)(a) ("An inmate shall be assigned to a facility that can provide appropriate security and supervision, that can meet the health needs of the inmate as identified by the department's health services staff, and, to the extent possible, can meet the inmate's need for programs and is near the location of the inmate's family.") (emphasis added).

Moreover, the use of the word "shall" does not of itself create a liberty interest.  Before 1995, Supreme Court decisions provided that a prison regulation could give rise to a liberty interest if it used mandatory language to constrain official discretion.  *See, e.g.*, Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 461–63, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); Hewitt v. Helms, 459 U.S. 460, 470–71, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); Olim v. Wakinekona, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983).  However, the Supreme Court rejected the "mandatory language" approach in Sandin, 515 U.S. 472 (1995).  The Court reasoned that this approach interfered with prison administration by reducing flexibility and discouraging codification of prison management procedures and thereby oversight of prison staff.  *See id.* at 481–83.  As discussed *supra*, the Court limited the field to those deprivations that "exceed[ ] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" or "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 486.

Prison transfers do not to amount to an atypical and significant hardship so as to trigger due process protections.  *See* McKune v. Lile, 536 U.S. 24, 39, 122 S. Ct. 2017, 153 L .Ed. 2d 47 (2002) (inmate's transfer to another facility does not implicate a liberty interest, even if it results in the loss of access to vocational, educational, recreational, and rehabilitative programs); Meachum v. Fano, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976); *see also, e.g.*, Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (prisoner did not state a due process claim because he has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison); Niceli v. McDonough, No. 4:07cv480/SPM/WCS, 2008 WL 783518, at *3 (N.D. Fla. Mar. 19, 2008). Therefore, Petitioner was not entitled to due process protections even though the disciplinary decision may adversely affect his ability to obtain a "good adjustment transfer."

Finally, Petitioner's contention that he had a liberty interest in consideration for early release, which was adversely affected by the disciplinary decision, is unconvincing.  Courts have also found too speculative arguments that a life sentenced inmate might potentially benefit from having a disciplinary report overturned.  *See* Sandin, 515 U.S. at 487 ("The chance that a finding of misconduct will alter the balance [in consideration of parole] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."); *see also* Cook v. Wiley, 208 F. 3d 1314, 1323 (11th Cir. 2000) ("Because the § 3621(d)(2)(B) sentence reduction [for conviction for a nonviolent offense] is left to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest."); Venegas v. Henman, 126 F. 3d 760, 764 (5th Cir. 1997) ("loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation for a constitutionally protected liberty interest"), Ferguson, 2011 WL 3611407, at *2 ("The effect of [a] disciplinary report upon [a prisoner's] future parole prospects is too speculative to give rise to any constitutional claim.").  Additionally, an inmate has no liberty interest in the possibility of parole or clemency.  *See* Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 283, 118 S. Ct. 1244, 140 L. Ed. 2d 387 (1998); Walker v. Fla. Parole Comm'n, 299 F. App'x 900, 901 (11th Cir. 2008) (unpublished); Ferguson, 2011 WL 3611407, at *3.

Because the disciplinary decision did not deprive Petitioner of a constitutionally protected liberty interest, no substantive or procedural due process rights attached to the disciplinary proceeding.  The state court correctly and reasonably applied clearly established federal law in adjudicating Petitioner's federal due process claims.  Therefore, he is not entitled to federal habeas relief.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended habeas petition challenging the disciplinary conviction on April 23, 2009, Log # 102-090945 (doc. 5) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 13th day of July 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**